THE CITY OF NEW YORK, Respondent, *v.* JOHN KAISER, Appellant.

Court of Special Sessions, City of New York, Appellate Part, Second Judicial Department, May 16, 1932.

*Paul A. Katske*, for the appellant.

*Arthur J. W. Hilly* [*Arthur. H. Kerns* of counsel], for the respondent.

KERNOCHAN, J. The only issue raised on the trial was whether the appellant and the complaining witness were legally married. In cases of this sort the legality of the marriage is of paramount importance for the basis of the Family Court is the existence of the marriage relation and an order for the support of children emanating from this court must be for the support of children born in lawful wedlock.

A careful reading of the testimony establishes the following facts: The complaining witness and the appellant met in July, 1916, and about two weeks afterwards they each left their own homes and went to live together in a furnished room at 9 Eldred street, Brooklyn. The complaining witness was then fifteen and one-half years old, the appellant twenty. They lived there for two months and cohabited together, then appellant returned to his own home, she to the home of her older sister at 1225 Broadway. The complainant lived with this sister for about two years and during this time her relations with the appellant remained the same. He cohabited with her at her sister's home although he still lived at his parent's home. On June 17, 1919, a child was born to them. Shortly after the birth of this child an agent of the Children's Society became interested in the case and attempted to compel a marriage between the two by threatening to bring a charge of rape against the appellant. No ceremonial marriage was ever consummated between the complainant and the appellant, but immediately after this threat of prosecution they went to live together as man and wife and so continued to live for twelve years until August or September, 1931.

During that time two other children were born to them, a boy Arthur in 1922, and a girl, Anna, in 1925.

During this twelve years they were known to their friends and relatives as man and wife, and each acknowledged that relationship to others of their acquaintance. Just prior to the alleged

abandonment by the appellant they seemed to have been happy and contented, then jealousy on the part of the appellant seems to have led to a disagreement.

At about the time that the complainant and the appellant began their life together the complainant, who was a Protestant, became a Catholic, the religion of the appellant, and the three children were all baptized in that faith.

Upon this evidence the magistrate found that a common-law marriage existed and made an order for the support of the children.

There is a strong presumption of marriage when there is proof of cohabitation apparently matrimonial and this presumption becomes stronger if it is followed by the birth of children. "The presumption of marriage, from a cohabitation, apparently matrimonial, is one of the strongest presumptions known to the law. This is especially true in a case involving legitimacy. The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy. Where there is enough to create a foundation for the presumption of marriage, it can be repelled only by the most cogent and satisfactory evidence." (*Hynes* v. *McDermott*, 91 N. Y. 451, 459.)

In the case at bar, however, it is established by the evidence that the relations between the complainant and the appellant were illicit in their inception, and there is a presumption that they so continued until a change in their character is shown by acts and circumstances strongly indicating that the connection has become matrimonial. (*Gall* v. *Gall*, 114 N. Y. 109, 113.)

In the case upon which this appeal is based the evidence clearly shows that such a change occurred in 1919 when the appellant was threatened with a criminal prosecution if he did not marry the complainant. They then went to live together under the same roof and held themselves out to their friends and relatives as being married. Whether this presumption has been rebutted becomes a question for the trier of the facts to decide.

*Gall* v. *Gall* (114 N. Y. 109, 113) is controlling on the question before us for it lays down these principles: " The cohabitation, apparently decent and orderly, of two persons opposite in sex, raises a presumption of more or less strength that they have been duly married. While such cohabitation does not constitute marriage, it tends to prove that a marriage contract has been entered into by the parties. Where, however, the cohabitation is illicit in its origin, the presumption is that it so continues until a change in its character is shown by acts and circumstances strongly indicating that the connection has become matrimonial. It is sufficient if the acts and declarations of the parties, their reputation as married people and the circum-

stances surrounding them in their daily lives, naturally lead to the conclusion that, although they began to live together as man and mistress, they finally agreed to live together as husband and wife. (*Caujolle* v. *Ferrie*, 23 N. Y. 90; *O'Gara* v. *Eisenlohr*, 38 id. 296; *Badger* v. *Badger*, 88 id. 546, 554; *Hynes* v. *McDermott*, 91 id. 451, 457.)

"A present agreement between competent parties to take each other for husband and wife constitutes a valid marriage, even if not in the presence of witnesses. (*Clayton* v. *Wardell*, 4 N. Y. 230; *Caujolle* v. *Ferrie, supra; Brinkley* v. *Brinkley*, 50 id. 184, 197.) Such a marriage may be proved by showing actual cohabitation as husband and wife, acknowledgment, declarations, conduct, repute, reception among neighbors and relations and the like. And where the intercourse was illicit at first, but was not then accompanied by any of the evidences of marriage, and subsequently it assumes a matrimonial character, and is surrounded by the evidences of a valid marriage above named, a question of fact arises for the determination of the jury. They are to weigh the presumption arising from the meretricious character of the connection in its origin with the presumption arising from the subsequent acknowledgment, declarations, repute, etc., and decide whether all of the circumstances taken together are sufficient evidence of marriage."

It is urged that the continued desire and request for a ceremonial marriage is ground for finding that the complainant never considered herself the wife of the appellant and this cannot be put lightly aside, but I feel that it is a fair inference from the testimony that although she desired this as more fitting still it does not go so far as to show that she did not regard herself as married in a civil sense. This question arose in *Procita* v. *Procita* (190 N. Y. Supp. 21, 22), and Judge BORST said: " Later she undoubtedly thought it was better and more in conformity with the better types of living that there should be a ceremonial marriage, and this is now urged as tending to establish that in the first instance they never agreed to be husband and wife. Giving this, however, all the weight that may properly be accorded to it, it does not shake the conclusion that the parties agreed, when they commenced to live together, that they should be, and were, husband and wife."

In my opinion a common-law marriage has been established and for that reason the order of the court for the support of the children of the marriage must be sustained. The magistrate erred, however, in not including the wife in this order of support and the order is thereby amended to read as follows:

(1) The defendant is adjudged a disorderly person.

(2) I hereby order John Kaiser to pay the sum of fifteen dollars per week for the support of his wife, Anna Kaiser, and his three children and for the enforcement of this order I direct that defendant be placed on probation for a period of twelve months, and as so amended the judgment is affirmed.

All concur; present, KERNOCHAN, P. J., and FETHERSTON and HERBERT, JJ.